## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

STACEY LEICHLITER,         )
                                    )
            Plaintiff,        )
                                    )
-vs-                        )       Case No. CIV-21-1002-F
                                    )
OPTIO SOLUTIONS, LLC d/b/a   )
QUALIA COLLECTION SERVICES,  )
                                    )
            Defendant.     )

## ORDER

This action arises under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.* Plaintiff Stacey Leichliter (Leichliter) claims defendant Optio Solutions, LLC d/b/a Qualia Collection Services (Optio) violated the FDCPA by continuing its attempt to collect a debt she purportedly owed to Capital One Bank (Kohl's), after she notified Optio by certified letter, dated January 27, 2021, that she refused to pay the alleged debt. Leichliter alleges Optio's actions specifically violated § 1692c(c) of the FDCPA.[1] As a remedy for the statutory violation, Leichliter seeks actual and statutory damages.

---

[1] Section 1692c(c) states, in relevant part,

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
>
> > (1) to advise the consumer that the debt collector's further efforts are being terminated;

Optio admits it sent communications to Leichliter following its receipt of her January 27, 2021 letter.  However, Optio has moved, pursuant to Rule 56(a), Fed. R. Civ. P., for summary judgment in its favor on Leichliter's § 1692c(c) claim on two grounds:  (1) Leichliter lacks Article III standing to prosecute the claim; and (2) it is entitled to avail itself of the bona fide error affirmative defense provided in 15 U.S.C. § 1692(k).  Leichliter has responded, opposing Optio's motion, and she has also moved for partial summary judgment under Rule 56(a) seeking a ruling that Optio violated the FDCPA and is liable to her for the statutory violation.  Optio has responded, opposing Leichliter's motion based on her lack of Article III standing and the bona fide error affirmative defense.  Upon review of the parties' submissions, the court makes its determination.

I. <u>Standing</u>

First, Optio argues that Leichliter lacks Article III standing to bring her FDCPA claim.  Optio specifically argues that Leichliter did not suffer a concrete injury from the alleged statutory violation.  Optio states that Leichliter, in her verified response to its interrogatories, asserted that she was harmed–due to receipt of the collection letters–by way of anger and anxiety, headaches, and trouble sleeping.  Also, Optio states that Leichliter testified in deposition that its collection letters gave her heightened anxiety, frustration, migraines, and sleepless nights.  She further testified that she was damaged because of money she spent mailing her January 27, 2021 letter to Optio.  However, Optio contends that the harm identified

---

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c(c)

by Leichliter during discovery does not qualify as concrete harm and is insufficient to confer Article III standing.  Optio points out that Leichliter did not receive any medical care for her alleged emotional distress and the money she expended in sending the January 27, 2021 letter to Optio preceded the alleged statutory violation. Further, Optio points out that, under Supreme Court precedent, an FDCPA violation, by itself, does not qualify as concrete harm to support Article III standing.  Rather, to have standing, Optio contends, the plaintiff must be harmed by the FDCPA violation.

In its papers, Optio also asserts that even though Leichliter alleged in her complaint that she was damaged in the form of an invasion of privacy or an intrusion upon her seclusion, she did not identify during discovery any harm or injury relative to the alleged invasion of privacy or intrusion upon her seclusion.  Optio emphasizes that Leichliter testified that she took no action because of the letters it sent; she "simply added them to a pile." Doc. no. 27, ECF p. 20.  And Optio argues that absent physical manifestation or resulting treatment, the alleged emotional harm, "anger" and "anxiety" due to its alleged FDCPA violation cannot qualify as concrete harm. Therefore, Optio contends that Leichliter's FDCPA claim must be dismissed for lack of Article III standing.

Leichliter counters that she has shown that she suffered a concrete injury from receipt of the collection letters because she suffered harm analogous to the common law tort of intrusion upon seclusion.  Additionally, she contends that she suffered concrete harm in the form of emotional distress, which physically manifested itself in the form of migraine headaches, making her feel angry and anxious, and disrupting her sleep.  Leichliter asserts that such harm should not be overlooked simply because she did not seek medical attention.  Further, Leichliter maintains that her mother can and has by declaration corroborated the harm she suffered.

Optio retorts that the receipt of its two collection letters did not interfere with Leichliter's right to seclusion.  It asserts that Leichliter did not suffer any concrete harm from the receipt of those letters.  Optio maintains that Leichliter has no documentation from any admissible source to support her alleged emotional harm. It argues that Leichliter's mother's declaration cannot be considered as evidence because it constitutes inadmissible hearsay.

"'Article III standing is a fundamental requirement for any party seeking relief in federal court.'" Lupia v. Medicredit, Inc., 8 F.4th 1184, 1190 (10th Cir. 2021) (quoting United States v. Colo. & E. R.R., 882 F.3d 1264, 1269 (10th Cir. 2018)). "Standing 'ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate.'" Id. (quoting Tandy v. City of Wichita, 380 F.3d 1277, 1283 (10th Cir. 2004)).

"To have standing, a plaintiff must show that she (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Id. (quoting Spokeo, Inc. v. Robins, 578 U.S. 330 (2016).

Optio's standing challenge involves the first element—the requirement that Leichliter show she has suffered an injury-in-fact.  To establish an injury-in-fact, Leichliter must show that "she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  Optio specifically argues Leichliter cannot show an injury-in-fact that is concrete.  A "concrete" injury is one that is "'real' rather than 'abstract.'" Lupia, 8 F.4th at 1190.

"[T]raditional tangible harms, such as physical harms and monetary harms" readily qualify as concrete injuries under Article III.  TransUnion LLC v. Ramirez,

141 S.Ct. 2190, 2204 (2021).  However, intangible harms can also be concrete if they are "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."  *Id*.  Such harms include "reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id*.

Initially, the court concludes that the record contains sufficient evidence to establish a tangible concrete harm.  First, Leichliter testified that, after receipt of the collection letters, she suffered emotional distress, which manifested itself physically in the form of migraines.  Doc. no. 24-3, ECF p. 35, ll. 19-25, ECF p. 38, ll. 4-7; doc. no. 28-7, ECF p. 25, ll. 19-25; ECF p. 28, ll.47.  Courts have found such evidence sufficient to establish standing.  *See*, Drechen v. Rodenburg, LLP, 2022 WL 17543056, * 4 and n. 6 (D. Minn. Dec. 8, 2022) (citing cases).  Although Optio complains Leichliter's testimony is self-serving, it is nonetheless legally competent for summary judgment purposes, irrespective of its self-serving nature.  *See*, Janny v. Gamez, 8 F.4th 883, 900 (10th Cir. 2021) ("'So long as an affidavit is based upon personal knowledge and sets forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature.'") (quoting Speidell v. United States through Internal Revenue Service, 978 F.3d 731, 740 (10th Cir. 2020)).  Further, the court rejects Optio's argument that Leichliter's testimony is conclusory.  The testimony provides specific facts as to physical manifestations, *i.e.*, migraines.  Consequently, the court finds adequate evidence of tangible concrete harm for Article III standing.

In addition, the court finds that the record contains evidence sufficient to establish an intangible concrete harm, *i.e.*, a harm analogous to the common law tort of intrusion upon seclusion.  The Tenth Circuit, in Lupia, found the plaintiff, who alleged a claim under § 1692c(c), "suffered an injury bearing 'a close relationship' to the tort of intrusion upon seclusion" when the defendant debt collector made an

unwanted call and left her a voicemail when unanswered about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications. Lupia, 8 F.4th at 1191. The panel specifically rejected the defendant debt collector's contention that a single telephone call, which resulted in a voicemail, failed to give rise to the level of an actionable intrusion upon seclusion tort. In so doing, the panel found instructive the Seventh Circuit's decision in Gadelhak v. AT&T Services, Inc., 950 F.3d 458 (7th Cir. 2020). In that decision, authored by then Circuit Judge Amy Coney Barrett, the Seventh Circuit rejected an argument that a few unwanted text messages failed to rise to the level of an actionable intrusion-upon-seclusion tort. As quoted by the Tenth Circuit, Judge Barrett stated:

> [W]hen *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law. A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.

Lupia, 8 F.4th at 1192 (quoting Gadelhak, 950 F.3d at 462–63).

The Tenth Circuit found the same was true for a telephone call resulting in a voicemail. The panel stated:

> Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet.

Lupia, 8 F.4th at 1192 (emphasis in original).

In its motion, Optio contends that the analysis should be different for this case because Leichliter received an unwanted letter rather than a telephone call and voicemail. According to Optio, the receipt of a letter is less intrusive on "peace and quiet" than a telephone call and voicemail. Further, it relies upon the Fifth Circuit's decision in <u>Perez v. McCreary, Veselka, Bragg & Allen, P.C.</u>, 45 F.4th 816 (5th Cir. 2022), wherein the panel rejected the plaintiff's argument that the receipt of a single unwanted letter caused her to suffer a concrete injury analogous to the intrusion upon seclusion tort. In rejecting that argument, the Fifth Circuit stated:

> <u>TransUnion</u> explicitly recognized that harms analogous to this [intrusion on seclusion] tort can qualify as concrete. *See* 141 S. Ct. at 2204 (citing <u>Gadelhak</u>, 950 F.3d at 462). Before and after <u>TransUnion</u>, many of our sister circuits also held that unwanted communications could cause concrete injuries similar to intrusion upon seclusion or other privacy torts. Since the harms elevated by Congress need only be similar "in kind, not degree," <u>Gadelhak</u>, 950 F.3d at 462, it seems to follow that a single unwanted communication could qualify as a concrete injury even though intrusion upon seclusion requires many. So how can we say that Perez's receipt of the letter did not inflict a concrete injury?
>
> The answer is that Congress *didn't* elevate the receipt of a single, unwanted message to the status of a legally cognizable injury in the FDCPA. Perez sued MVBA for violating the statute's antifraud provision. 15 U.S.C. § 1692e. Congress's concern in prohibiting "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt" wasn't consumer privacy. It was the economic harms that consumers suffered due to aggressive and unfair attempts to collect their debts. *See id.* § 1692(a) (finding that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, [and] to the loss of jobs").
>
> Congress also expressed concern about "invasions of individual privacy." *Id*. § 1692(a). But it addressed those problems through a *different* section of the FDCPA: the statute's prohibition on harassment and abuse. *Id*. § 1692d. Perez hasn't sued MVBA based on that

provision, so she can't bootstrap the harms it recognizes as actionable to demonstrate standing to sue based on a different provision.

Anyway, the FDCPA's harassment provision doesn't recognize that a single unwanted message qualifies as a concrete harm. Instead, its closest analog to an unwanted letter—unwanted telephone calls—must be made "repeatedly or continuously." 15 U.S.C. § 1692d(5). Its general prohibition on actions that "harass, oppress, or abuse" a debtor carries the same connotation. *Id*. § 1692d. Accordingly, even if Congress could elevate a single unwanted message to the status of a concrete injury, it hasn't done so here. Perez does not have standing to bring her suit for damages.

Perez, 45 F.4th at 826 (footnotes omitted).

In this case, Leichliter's claim against Optio is predicated upon § 1692c(c), not § 1692e or § 1692d. In Vazzano v. Receivable Management Services, LLC, No. 3:21-CV-0825-D, 2022 WL 17406317 (N.D. Tex. Dec. 2, 2022), a district court in the Northern District of Texas recognized this difference.

The plaintiff in Vazzano predicated her claim on § 1692c(c). The district court found that "§ 1692c possesses the factors highlighted by the Perez panel: it contains language indicating Congress's intent to 'elevate a single unwanted message to the status of a legally cognizable injury,' and it pertains to consumer privacy such that its purpose is at least partly to prevent the kinds of harm associated with invasion of privacy torts like intrusion upon seclusion." *Id*. at *3.

As to the first factor, the district court stated:

Textual differences between § 1692c and § 1692d suggest that § 1692c was actually intended to elevate a single unwanted message to the status of a concrete injury. *Id*. The text of § 1692c(c) provides that when "a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, *the debt collector shall not communicate further* with the consumer with respect to such debt." 15 U.S.C. § 1692c(c) (emphasis added). Unlike the language of § 1692d that the Perez panel cited—that unwanted communications must be

8

made "repeatedly or continuously"—this provision does not dictate that a violation occurs only when there are multiple post-notice attempts to communicate. This difference undercuts the extent to which the <u>Perez</u> panel's conclusion that "Congress *didn't* elevate the receipt of a single, unwanted message to the status of a legally cognizable injury" governs the instant case. *See* <u>Perez</u>, 45 F.4th at 826.

<u>Vazzano</u>, 2022 WL 17406317 at *2.

Regarding the second factor, the district court stated:

[T]he harms Congress intended to prevent in enacting § 1692c are more related to consumer privacy. Section 1692c(a) prohibits communications at inconvenient times and at the consumer's place of employment and requires that debt collectors who know that a consumer is represented by an attorney communicate with the attorney rather than directly with the consumer. Section 1692c(b) strictly limits communication regarding a debt with parties other than the debtor. These prohibitions are certainly aimed, at least in part, at guarding a consumer's privacy.

And even § 1692c(c)—the provision implicated in the instant case— regulates types of communications that have a "close relationship" to the harm posed by an invasion of privacy. <u>Gadelhak</u>, 950 F.3d at 462. Section 1692c is at least animated both by the desire to protect consumer privacy and by the desire to avoid the economic and interpersonal hardships that abusive debt collection practices can produce. *See* 15 U.S.C. § 1692(a).

*Id*. at *3.

Because the district court concluded that § 1692c possessed the factors highlighted by the <u>Perez</u> panel, it concluded that the <u>Perez</u> decision did not undermine a finding that the plaintiff had standing to bring a claim under § 1692c(c) based on an intrusion upon seclusion theory of factual injury after receiving a single unwanted letter.

Citing the <u>Vazzano</u> decision as well as the <u>Lupia</u> decision, the district court in <u>Denmon v. Kansas Counselors, Inc.</u>, No. 4:21-00457-HFS, 2023 WL 2447471

(W.D. Mo. March 10, 2023), recently concluded that a plaintiff, alleging a claim under § 1692c(c), had Article III standing based upon her receipt of a single unwanted letter.

In light of the <u>Lupia</u>, <u>Vazzano</u>, and <u>Denmon</u> decisions, the court concludes the record contains adequate evidence to show that Leichliter suffered an intangible concrete injury.  Thus, the court rejects Optio's argument that Leichliter lacks Article III standing to bring the § 1692c(c) claim, and the court finds that Optio is not entitled to summary judgment on the § 1692c(c) claim for lack of standing.

## II. <u>Bona Fide Error Defense</u>

Optio doesn't challenge that the collection letters it sent to Leichliter after receipt of her refusal to pay letter violated § 1692c(c).  Instead, it asserts the violation was the result of a bona fide error.  That defense, set forth in 15 U.S.C. § 1692k(c), "is an affirmative defense that insulates debt collectors from liability even when they have violated the FDCPA."  <u>Johnson v. Riddle</u>, 443 F.3d 723, 727 (10th Cir. 2006). Section 1692k(c) specifically states:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

To prevail on the affirmative defense, a debt collector must show by a preponderance of the evidence that the statutory violation (1) was not intentional; (2) resulted from bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error.  <u>Lupia</u>, 8 F.4th at 1194.

Leichliter does not contest Optio's ability to establish that the first prong of the defense – the alleged statutory violation was not intentional.  *See*, <u>Johnson</u>, 443 F.3d at 728 ("[T]he issue of intent becomes principally a credibility question as to

the defendants' *subjective* intent to violate the [FDCPA] . . . In other words, the intent prong of the bona fide effort defense is a subjective test.") (quotation marks and citation omitted; emphasis in original). Rather, Leichliter argues that the evidence in the record is not sufficient to establish the other two prongs. These two prongs, as Leichliter points out, are objective tests. Johnson, 443 F.3d at 729.

The second prong "impose[s] an objective standard of reasonableness upon the asserted unintentional violation." Johnson, 443 F.3d at 729 (quotation marks and citation omitted). Thus, the court "considers, in part, whether a reasonable debt collector in the defendant's position would have appreciated that such conduct would be in violation of the [FDCPA]." Caputo v. Professional Recovery Services, Inc., 261 F.Supp.2d 1249, 1257-58 (D. Kan. 2003). Courts have defined "bona fide" errors as such actions that were "made in good faith; inadvertently; without fraud or deceit, and [with] faithfulness to one's duty or obligation." *Id*. at 1257 (quotation marks and citations omitted); Bynum v. Cavalry Portfolio Services, LLC, No. 04-CV-0515-CVE-PJC, 2006 WL 850935, at *5 (N.D. Okla. Mar. 30, 2006).

Upon review of the record, the court concludes that a genuine issue of material fact exists as to whether Optio's actions were made in good faith as asserted by the company.

The third prong of the defense—maintenance of procedures—"involves a two-step inquiry: first, whether the debt collector 'maintained'—*i.e.*, actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue.'" Johnson, 443 F.3d at 729 (citations omitted).

Optio contends that it maintains and implements policies and procedures to avoid the alleged statutory violation—continuing to collect a debt after receipt in writing by a consumer of a refusal to pay the debt. It also contends that the policies

and procedures, that it maintains and implements, were reasonably adapted to avoid the alleged statutory violation.

Upon review of the record, the court concludes that genuine issues of material fact exist as to whether Optio maintains and implements procedures adequate to avoid errors and as to whether the procedures were reasonably adapted to avoid the specific error at issue.

Because the court concludes that genuine issues of material facts exist as to the second and third prongs of the bona fide affirmative defense, the court concludes that both Optio's motion and Leichliter's motion should be denied.

III. Conclusion

For the reasons stated, Defendant Optio Solutions, LLC's Motion for Summary Judgment (doc. no. 24) and Plaintiff's Motion for Partial Summary Judgment as to Liability (doc. no. 28), are **DENIED**.

IT IS SO ORDERED this 12th day of May, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-1002p016.docx

12